UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>CORNELL JOHNSON,<br><br>    Defendant. | No. 19-20017 |

**Defendant's Memorandum of Law in
Support of Sentencing Commentary**

Defendant Cornell Johnson, through Assistant Federal Public Defender Johanes Maliza, respectfully submits this Memorandum of Law in Support of his sentencing commentary.

**I.  A Sentence of 480 Months is Sufficient, but Not Greater than Necessary**

The question in this case is whether the Court should sentence Mr. Johnson to a lifetime in prison.  It is not whether he should get a serious sentence.  It is not whether he should go through the prime of his life in prison, or whether he should miss his family's through the years, or be whomever he will become in prison.  All of that will happen.  The question is whether Mr. Johnson – being a teenager and barely into his 20s when he committed his crimes – will ever get out.  Put another way, is Mr. Johnson so irredeemable that death in prison is necessary?

It is not necessary.  Mr. Johnson has the capacity for rehabilitation.  It is not even a matter of capacity.  Rather, it is a matter of inevitable rehabilitation, because he will

grow up.  Growing up – moving into your mid-20s, then 30s, then 40s and 50s – changes us all.  Mr. Johnson will change, grow, and become a different person by the time he is in his 60s.

His youth during his conduct is no excuse, but it is relevant.  Studies have shown that human brains are not fully wired when they are children, or when they are 18, or even until age 25.  *See* Ex. A.  From a physiological standpoint, he was not operating with a fully formed brain.

But beyond his non-adult brain, Mr. Johnson fell out of step with society, then completely fell out of society, during his conduct.  That absence from society begat a lack of recognition that real world actions have real consequences for himself and others.

First, Mr. Johnson was functionally a child during this conduct.  He had been out of school and removed from meaningful peer groups since eighth grade.  Decatur Public School records show that Mr. Johnson's last year of enrollment was 2013 – age 13 – after failing eighth grade.  *See* Ex. B.  His mother apparently did not send him back to any school because she disliked *one* principal's treatment of him in *one* school.  PSR ¶ 151.  She says he was homeschooled after that, but Mr. Johnson, himself, does not remember it that way.  PSR ¶ 151 (Mr. Johnson "advised that he never enrolled in high school.").

The other problem is that he was *always* on the computer.  His mom says he was homeschooled through online classes.  PSR ¶ 151.  Even if he was in school, it was not interacting with the outside world.  For the past year, all of America has witnessed how

2

detrimental Zoom school is, and how harmful it is to children's growth.  *See* Stringer, Heather, "Zoom School's Mental Health Toll on Kids," American Psychological Association, available at https://www.apa.org/news/apa/2020/10/online-learning-mental-health, accessed 4-9-21.  Mr. Johnson obviously had school issues – he failed eighth grade. But his issues were compounded by then doing video school – which we now know is a disaster – and just dropping out of school.  He lost touch with real world people.

This loss of touch was most obvious in how he became nocturnal.  He would sleep until about 3 p.m. in the afternoon.  He would wake up, get drunk with his grandfather, and then stay up until the morning.  Then do it all over again.  It was a bizarre schedule.  For hours each night, he must have felt like the only person in his home or even the world, since everyone else was asleep.

At the same time, he became obsessed with video games.  Mr. Johnson is a self-professed gamer.  He spent countless hours playing various games, immersing himself in make believe worlds.  As he moved into adolescence, his world had shrunk to the screen in front of him all day long.  And "reality" – the sorts of real world interactions that should teach someone how to act – was on a screen, instead of being real people.

When he did what he did, it was not from a perspective that he was participating in real life, or that there would be real consequences.  He was a kid, walking heedlessly through life, in a drunken stupor in the middle of the night.

Think of it this way: If Mr. Johnson had left his basement with any regularity, he may have realized that actions have consequences. Venturing out on the street during the

day, he may have run into more trouble than his one prior conviction, or he may have seen others get into trouble. He may have seen that mistreating people harms them, and results in the perpetrator going to prison or getting hurt.  But he saw none of that.  His world was a screen in the dark, with limited contact with others outside of his home.

Mr. Johnson will rehabilitate because prison – this sentence he has already started serving, and which will last decades more – is Mr. Johnson's first time living outside his home.

When Mr. Johnson gets out, he will be a different person, and much less likely to recidivate. The Sentencing Commission's study on recidivism backs this up:

> Age exerted a strong influence on recidivism across all sentence length categories. Older offenders were less likely to recidivate after release than younger offenders . . . .

*See* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf, accessed 4-10-21.  Studies also show that sex offender treatment, which he will surely receive at BOP, works.  The modern "Risk, Need, and Responsivity" model of sex offender treatment is "is effective for intervention with offenders in general . . . ."  *See* https://psycnet.apa.org/fulltext/2014-12592-016.html, accessed 4-10-21.  He will be in a long time, and get the treatment he needs.

If his request – 40 years – is granted, he will get out on the cusp of senior citizenship, and will be a different person in every way.

## II. Mr. Johnson's Disconnect in Context

Mr. Johnson's disconnect from society does not exist in a vacuum. His childhood was not as consistently chaotic and traumatic, as it was unmoored and confusing. He never met his biological father as a little kid. He had been addicted to crack and entirely absent.

His mother was in and out of prison, and her absence repeatedly resulted in him going to live with relatives. Some were alright, but others were abusive. Above all, there was no sense of safety and consistency – Mr. Johnson might move from one place to another, then again, and it was not clear that he would be safe in any particular place.

When his mom was out of prison, he would live with his mom and stepfather. They were never abusive towards him, but his stepfather did have domestic incidents with his mother. His parents had substance abuse issues, and poverty issues. When the family (mom, stepfather, and siblings) was together, it was a loving family, but not necessarily a nurturing home.

The lack of safety – and the confusion it created – was part of a path towards severe alcoholism for Mr. Johnson. As noted above, he drank daily with his grandfather (for "breakfast" at 3 p.m.). He drank copious amounts of vodka – up to four pints of vodka per day. PSR ¶ 148. That is an incredible amount. All other issues aside, that amount of vodka would, at best, create incredibly poor decision making.

When coupled with Mr. Johnson's lifestyle, the alcoholism puts Mr. Johnson's conduct into focus. He spent all day, every day, sleeping. Then he spent all night, every night, in his parents' basement watching a screen for one reason or another. He

was always drunk. And not just buzzed or tipsy. He was four-pints of vodka per day drunk.

Mr. Johnson did not grow up in the worst home, but he did not grow up in a good home. Mr. Johnson was not getting high on meth, or heroin, or crack, but he was getting drunk on a lot of vodka. And he was only marginally connected to society. He sat every night, drunk, in front of a screen, and never left to see how normal people behave in real life.

Mr. Johnson's conduct was inexcusable. But it was in the context of a drunken, isolated existence.

### III. Other Cases

The guidelines in this case are high. That said, many defendants have come before this Court in the last few years with indefensible conduct, similarly high guidelines, and they did not receive life sentences.

- Nehemiah LaFoe, C.D. Ill. No. 17-20053, got 360 months for traveling across state lines to have sex with his niece.

- Gary Boyle, C.D. Ill. No. 19-20019, got 360 months for filming himself abusing his daughter, and broadcasting it on the internet live.

- Christopher Bailey, C.D. Ill. No. 20-20040, got 324 months for assaulting four victims, including two child family members, and physically muffling the screams of at least one of his victims, while making another child family member watch.

- Andrew Fleming, C.D. Ill. No. 18-30024, got 240 months for forcing one child to watch him assault a sibling, then threatening to murder the child whom he had forced to watch if she said anything.

Each earned a severe sentence. But in each case, this Court demonstrated that punishment need not be eternal. The punishment need not be death in prison in Mr.

Johnson's case, because rehabilitation is possible, and he will be a different person if he gets out in his 60s. A decades-long sentence will serve the § 3553(a)(2) interests of punishment, community protection, and deterrence.

Mr. Johnson will pay a heavy price. More than 40 years would be greater than necessary.

WHEREFORE Defendant respectfully requests that the Court sentence him to (a) 480 months in prison; (b) lifetime supervised release; (c) no fine; (d) the minimum required restitution; and (e) the mandatory special assessment.

Respectfully submitted,

April 10, 2021

CORNELL JOHNSON, Defendant,

THOMAS PATTON, Federal Public Defender

By: s/ Johanes Maliza
Johanes C. Maliza (6323056)
Assistant Federal Public Defender
600 E. Adams St., Third Floor
Springfield, IL 62701
Telephone:   217-492-5070
Facsimile:   217-492-5077
E-mail:      johanes_maliza@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

s/ Johanes C. Maliza